CORINA R. PANDELI, SBN 283054
TRIAL ATTORNEY
OFFICE OF THE UNITED STATES TRUSTEE
880 Front Street, Suite 3230
San Diego, CA 92101
(619) 557-5013

Attorney for
TIFFANY L. CARROLL
ACTING UNITED STATES TRUSTEE

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re:<br><br>MICHAEL JEFFREY MORTON and KRISTEN LEONA MORTON,<br><br>Debtors. | Case No.: 21-01607-LA7<br><br>**ACTING UNITED STATES TRUSTEE'S MOTION TO DISMISS CASE PURSUANT TO 11 U.S.C. § 707(b)**<br><br>Date:   September 23, 2021<br>Time:   2:00 p.m.<br>Judge:  Hon. Louise D. Adler |

Tiffany L. Carroll, the Acting United States Trustee ("United States Trustee"), submits this Motion to Dismiss Bankruptcy Case Pursuant to 11 U.S.C. §§ 707(b). Central to this Motion to Dismiss is the Debtors' repayments on three loans against a 401k retirement account. The Debtors improperly deducted the loan repayments from their Means Test; adjusted accordingly, the presumption of abuse arises in this case and the Debtors have not provided evidence of special

1

circumstances that rebut the presumption. Thus, case dismissal under § 707(b)(2) is warranted. In the alternative, as the Debtors pay off the 401k loans within the next year and a half, they can dedicate that same amount of income each month towards a 60-month plan and, thus, they have the ability to repay a percentage of their unsecured debt. As such, case dismissal is also warranted under § 707(b)(3).

## BACKGROUND

The Debtors filed a voluntary chapter 7 petition on April 21, 2021. *See* Declaration of Michael West in Support of Motion to Dismiss Case Pursuant to 11 U. S.C. § 707(b) (hereafter, "West Decl.") at ¶ 3. Mr. Morton is a longtime scientist for a pharmaceutical company and Mrs. Morton is unemployed. *Id*. at ¶ 4.

On Schedule A/B, the Debtors listed a 401k retirement account with Janssen R&D, LLC in the amount of $300,000 ("401k account"). West Decl. at ¶ 5. The Debtors have taken out three loans against the 401k account; as of the petition date, the total balance owed on the loans was $15,000. *Id*. at ¶ 6. Based on documents subsequently provided to the United States Trustee, these three loans are scheduled to paid off, respectively, on August 20, 2021; September 2, 2022; and February 13, 2023. *Id*. at ¶ 16. In addition, Mr. Morton has been making voluntary retirement contributions in the amount of $279.50 per month. *Id*. at ¶ 14.

The Debtors Schedule E/F reflects $80,385 in general unsecured debt. West Decl. at ¶ 7.

# ARGUMENT

**A.    Case dismissal is warranted under § 707(b)(2) based on the Means Test presumption of abuse that the Debtors have not rebutted.**

Section 707(b)(1) provides that, after notice and a hearing, the bankruptcy court may dismiss a chapter 7 case if the bankruptcy court finds that granting relief would be an abuse of the provisions of chapter 7. Abuse is determined by the means test formula under § 707(b)(2) or whether the totality of the circumstances of the debtor's financial circumstances, such as ability to repay debt, demonstrates abuse under § 707(b)(3).

Here, the Debtors indicated on their Means Test that the presumption of abuse did not arise. Based on the United States Trustee's assessment, that was incorrect. West Decl. at ¶¶ 9-10 & n. 1. Thus, on July 21, 2021, the United States Trustee filed a 10-day statement indicating that the case was filed with abuse.[1]

As part of the Debtors' Means Test, the Debtors reported $884 in monthly payments to the Janssen R&D pension plan administrator as a secured debt under "Deductions for Debt Payment." West Decl. at ¶ 9. Based on the Debtors' Schedule I, Means Test, and the Debtors' testimony at their initial creditor

---

[1] As a result, this motion is timely pursuant to § 704(b)(2). On August 18, 2021, the Court entered an order extending the deadline to file a case dismissal motion under § 707(b)(3) to September 16, 2021, based upon stipulation between the parties. *See* ECF No. 19. Thus, the requested relief in this motion for alternative relief under § 707(b)(3) is also timely.

3

meeting, the $884 monthly payment relates to the Debtors' three 401k loan repayments. *Id*. at ¶¶ 8, 9, 15.

The Debtors' application of the 401k loan repayments was an improper deduction on the Means Test. The Ninth Circuit specifically has held that a debtor cannot claim a 401k loan repayment as a secured debt deduction on the Means Test. *In re Egebjerg*, 574 F.3d 1045, 1049 (9th Cir. 2009). In doing so, the Ninth Circuit stated that a "debtor's obligation to repay a loan from his or her retirement account is not a 'debt' under the Bankruptcy Code" and, thus, could not be deducted on the Means Test. *Id*. As explained by the Ninth Circuit, the reasoning for this conclusion is straightforward; the debtor's obligation to repay a loan from a retirement account essentially is a debt owed to themselves – the debtor in effect borrowed against their own money. *Id*. If the debtor fails to repay the obligation, there is no personal recourse against the debtor. *Id*. Instead, the outstanding loan balance is deemed a distribution of funds that reduces the amount available to the debtor at retirement. *Id*. Tax consequences will follow, but an early distribution from the retirement account "does not create a debtor-creditor relationship." *Id*.

Here, after removing the improper deduction from the Means Test, the presumption of abuse arises. West Decl. at ¶¶ 9-10 & n. 1. Pursuant to § 707(b)(2)(B)(i), "the presumption of abuse may only be rebutted by demonstrating special circumstances, . . . to the extent such special circumstances

4

that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative."

The Bankruptcy Code does not define or provide an exhaustive list of "special circumstances." Of the two examples referenced by the Bankruptcy Code ("a serious medical condition or a call or order to active duty in the Armed Forces"), "both constitute situations which not only put a strain on a debtor's household budget, but [also] arise from circumstances normally beyond the debtor's control." *In re Egebjerg*, 574 F.3d at 1053 (internal citation and quotation marks omitted).

The Debtors bear the burden of establishing "special circumstances." *In re Greer*, 2011 WL 10676936, at *5 (Bankr. E.D. Cal. Sept. 30, 2011). This includes demonstrating that there is no reasonable alternative for the additional expense and providing a detailed explanation of the special circumstances that make the expense necessary and reasonable. *Id.*

A loan repayment of a 401k loan does not typically constitute a special circumstance within the meaning of § 707(b)(2). As the Ninth Circuit explained in *Egebjerg*, "retirement plan loans are neither extraordinary nor rare; many individuals take loans for many different reasons, and they are all required to repay the loans. Without more, a situation as common as the withdrawal of one's retirement funds cannot be a 'special circumstance' within the accepted definition

of this term." 574 F.3d at 1053 (internal citation and quotation marks omitted).

Here, the Debtors have not shown that special circumstances exist that rebut the presumption of abusive filing. There is nothing in the record that supports a determination of special circumstance. Nor have the Debtors produced to the United States Trustee any evidence that would support a determination of special circumstance for the purposes of rebutting the presumption of abuse.

On this record, the Debtors have not rebutted the presumption of abuse that arose under the Means Test. Consequently, granting the Debtors' discharge would be an abuse of chapter 7 and the Bankruptcy Code and, thus, case dismissal is warranted under § 707(b)(2).

**B.    In the alternative, case dismissal is warranted under § 707(b)(3)(B) based on ability to repay a portion of unsecured debt.**

To determine whether abuse exists under § 707(b)(3), the bankruptcy court examines whether the totality of the circumstances surrounding the debtor's financial situation demonstrates abuse. In doing so, it considers various non-exclusive factors.[2] *Ng v. Farmer (In re Ng)*, 477 B.R. 118, 126 (9th Cir. BAP

---

[2]   The non-exclusive list of factors that the bankruptcy court may consider in evaluating the totality of the circumstances include:

> Whether the debtor has a likelihood of sufficient future income to fund a Chapter 11, 12, or 13 plan which would pay a substantial portion of the unsecured claims; [(2)] Whether the debtor's petition was filed as a consequence of illness, disability, unemployment, or some other calamity; (3) Whether the schedules suggest the debtor obtained cash advancements and consumer goods on credit exceeding his or her ability to repay them; (4) Whether the debtor's proposed family budget is excessive or extravagant; (5) Whether the debtor's statement of income and expenses is

6

2012) (citing *Price v. U.S. Tr. (In re Price)*, 353 F.3d 1135, 1139–40 (9th Cir. 2004)). That said, "[t]he primary factor defining [] abuse is the debtor's ability to pay his debts as determined by the ability to fund a Chapter 13 plan." *In re Ng*, 477 B.R. at 126 (quoting *In re Price*, 353 F.3d at 1140). Consequently, the debtor's ability to repay their debts alone justifies case dismissal under § 707(b)(3)(B). *Id.* (quoting *In re Price*, 353 F.3d at 1140).

Here, the Debtors can fund a 60-month plan and pay a meaningful amount of their unsecured debt. In conducting a detailed analysis of the Debtors' financial situation, the United States Trustee reviewed the Debtors' Schedules I and J, as well as other documents provided to the United States Trustee by the Debtors. West Decl. at ¶¶ 2, 16.

Based on the foregoing, the United States Trustee calculated that the Debtors will have sufficient monthly disposable income to support a "step-up" plan during the course of a 60-month period as they satisfy the obligations in full on their 401k loans. In particular, following payment in full of the first 401k loan on August 20, 2021, the Debtors should have $109.46 per month to contribute towards plan payments. West Decl. at ¶ 21. Following payment in full of the second 401k loan on September 2, 2022, the Debtors should have a total of $234.17 per month to

---

misrepresentative of the debtor's financial condition; and (6) Whether the debtor has engaged in eve-of-bankruptcy purchases.

*In re Ng*, 477 B.R. at 126 (quoting *In re Price*, 353 F.3d at 1139–40)).

contribute towards plan payments. *Id*. And, finally, following payment in full of the third 401k loan on February 3, 2023, the Debtors should have a total of $884.35 per month to contribute towards plan payments. *Id*. In total, the Debtors will have approximately $32,762.77 to fund a 60-month plan and pay a portion of their general unsecured creditors. *Id*. at ¶ 20.

The Debtors' Schedule E/F reflects nonpriority unsecured debts in the amount of $80,385. West Decl. at ¶ 7. Based on the amount of available monthly disposable income through a 60-month step plan and the amount of unsecured debt, the percentage of unsecured claims that could be paid under a 60-month plan is approximately 40.76%. *Id*. at ¶ 20.

These calculations are based on the amounts reported on the Debtors' Schedule I and accepting the expenses listed at face value. The United States Trustee is not objecting to any of expenses listed or the amounts claimed thereunder; this includes Mr. Morton's voluntary 401k contributions in the amount of $279.50 per month. West Decl. at ¶ 14. At the initial creditor meeting, Mr. Morton testified that he intended to keep paying the 401k loan repayments and that he could afford to do so. *Id*. at ¶ 8. All the United States Trustee requests is that, as the 401k loans are paid in full over the next year and a half, the Debtors redirect those same payment amounts to payments under a 60-month plan.

The Debtors can repay a portion of their unsecured debt through a 60-month

plan. This is sufficient to justify case dismissal under § 707(b)(3)(B). *See, e.g.*, *In re Ng*, 477 B.R. at 126. The totality of the circumstances of the Debtors' financial situation demonstrates that granting the Debtors a chapter 7 discharge would constitute an abuse of chapter 7 because they have the ability to repay a healthy portion of their unsecured debt. Thus, the Court should dismiss the case under § 707(b)(3)(B).

## CONCLUSION

Based on the foregoing, the United States Trustee respectfully requests that the Court enter an order dismissing this chapter 7 case as an abusive filing pursuant to § 707(b)(2) and/or § 707(b)(3).

Respectfully submitted,

TIFFANY L. CARROLL
ACTING UNITED STATES TRUSTEE

Dated:  August 19, 2021       By:  /s/ Corina R. Pandeli
                                   Corina R. Pandeli
                                   Attorney for the Acting United
                                   States Trustee